UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREDDY HWANG, et al,, | Case No. 2:22-CV-879 JCM (EJY) |
| Plaintiffs, | ORDER |
| v. | |
| REDWOOD FIRE & CASUALTY INSURANCE COMPANY, | |
| Defendants. | |

Presently before the court is defendant Redwood Fire and Casualty Insurance Company's motion for partial summary judgment. (ECF No. 33). Plaintiffs Freddy Hwang and Sapporo Group Nevada, Inc. filed a response (ECF No. 34), to which Redwood replied (ECF No. 38).

**I.   Background**

This is an insurance dispute case removed to federal court based on diversity jurisdiction. (ECF No. 1). Plaintiffs Hwang and Sapporo Group filed a complaint against Redwood claiming failure to provide insurance benefits, failure to communicate, breach of contract, tortious breach of the duty of good faith and fair dealing, and statutory violations of Nevada Revised Statute § 686A.310. (ECF No. 1). Plaintiffs request an award of attorney's fees and punitive damages, in addition to all other damages available under the law. (*Id.* at 21). The following facts are not disputed.

Plaintiff Hwang owns plaintiff Sapporo Group, a Nevada corporation. (*Id.* at 11). Defendant Redwood is a California insurance company. (*Id.*). In December of 2021, Hwang was

1   involved in a car accident while driving a Sapporo Group car covered by a Redwood insurance

2   policy. (*Id.* at 12). The policy contains an appraisal clause that states:

3   > If you and we disagree on the amount of "loss," either may demand
>   an appraisal of the "loss." In this event, each party will select a
4   > competent appraiser. The two appraisers will select a competent and
>   impartial umpire. The appraisers will state separately the actual
5   > cash value and amount of "loss." If they fail to agree, they will
>   submit their differences to the umpire. A decision agreed to by any
6   > two will be binding.

7   (ECF No. 34, at 6).

8          Shortly after the accident, Sapporo Group submitted a claim to Redwood for $3,232.61 in

9   damages it alleges were caused by the accident, which was later increased to $10,706.09 in January

10  2022. (ECF No. 33, at 9). In late February, Redwood invoked the appraisal clause after a dispute

11  arose between the parties over the damages amount. (Pl.'s Ex. 1, ECF No. 34, at 23–24). Redwood

12  maintains that the accident caused only $1,015.14 in damages. (*Id.*).

13         It is at this point that the parties' accounts of events differ. According to the plaintiffs,

14  Redwood caused substantial delays in the appraisal process. (ECF No. 34, at 4). The appraisal

15  clause was invoked in late February, but an umpire did not render a decision until late July. (*Id.*).

16  And, even after a decision was rendered, Redwood refused to issue payment. (*Id.*). All the while,

17  Sapporo Group's car was racking up significant storage fees. Plaintiffs were thus forced to file

18  this suit against Redwood. (*Id.* at 17).

19         Redwood maintains that any delays that occurred after it invoked the appraisal clause were

20  reasonable. (ECF No. 38, at 14). And—not only did the umpire fail to include Redwood's

21  appraiser, Nick Lindsey, in the appraisal process—he rendered a decision without reviewing

22  Lindsey's supporting documents. (*Id.* at 15). The policy also requires an umpire award to be

23  signed by at least two of the three persons involved (the umpire and the parties' respective

24  appraisers) to be binding. (*Id.* at 13). But to date, the plaintiffs have not produced an umpire

25  award bearing at least two signatures. (*Id.* at 13).

26         Accordingly, Redwood asks this court to grant summary judgment in its favor on plaintiffs'

1  claims for failure to communicate, tortious breach of the duty of good faith and fair dealing, and

2  statutory violations of NRS 686A.310.  (*Id.* at 17).  Redwood also asks this court to find that the

3  plaintiffs are not entitled to an award of punitive damages or attorney's fees and that judgment

4  should be entered against Hwang for lack of standing.  (*Id.*).

5  **II.    Legal Standard**

6      Federal courts sitting in diversity apply the relevant state substantive law and federal

7  procedural law unless state law conflicts with a valid federal statute or procedural rule.  *E.g.*,

8  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (quoting *Erie R.R. v. Tompkins*,

9  304 U.S. 64, 78 (1938)); *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th

10 Cir. 1999).  The standards governing summary judgment are procedural, not substantive.  *See*

11 *Cortez v. Skol*, 776 F.3d 1046, 1054 n.8 (9th Cir. 2015) (citing *Knievel v. ESPN*, 393 F.3d 1068,

12 1073 (9th Cir. 2005)).

13     The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

14 depositions, answers to interrogatories, and admissions on file, together with the affidavits (if any),

15 show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

16 as a matter of law."  FED. R. CIV. P. 56(a).  Information may be considered at the summary

17 judgment stage if it would be admissible at trial.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.

18 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001).

19     A principal purpose of summary judgment is "to isolate and dispose of factually

20 unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In judging evidence

21 at the summary judgment stage, the court does not make credibility determinations or weigh

22 conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving

23 party.  *See T.W. Electric Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630–

24 31 (9th Cir.1987).

25     When, as is the case here, the non-moving party bears the burden of proof at trial, the

26 moving party can meet its burden on summary judgment in two ways: (1) by presenting evidence

3

1    to negate an essential element of the non-moving party's case; or (2) by demonstrating that the

2    non-moving party failed to make a showing sufficient to establish an element essential to that

3    party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S.

4    at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied,

5    and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress &*

6    *Co.*, 398 U.S. 144, 159–60 (1970).

7         If the moving party satisfies its initial burden, the burden then shifts to the opposing party

8    to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

9    *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

10   opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

11   that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

12   versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

13   630 (9th Cir. 1987).

14        However, the nonmoving party cannot avoid summary judgment by relying solely on

15   conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

16   1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

17   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

18   for trial.  *See Celotex*, 477 U.S. at 324.  If the nonmoving party's evidence is merely colorable or

19   is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby,*

20   *Inc.*, 477 U.S. 242, 249–50 (1986).

21   **III.    Discussion**

22        A.    Hwang's standing to sue.

23        The court must first address standing.  The plaintiff invoking federal jurisdiction bears the

24   burden of establishing standing.  *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 654 (9th

25   Cir. 2002).  A plaintiff's standing to bring a claim is a threshold issue that must be resolved before

26   reaching the merits of his claim.  *See id.*

4

1    To have standing to sue in federal court, a plaintiff must meet the "Case or Controversy"

2 requirement of Article III of the Constitution. U.S. CONST. ART. III, § 2.  That is, a plaintiff must

3 allege "'such a personal stake in the outcome of the controversy' as to warrant his invocation of

4 federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf."

5 *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975).

6    Redwood argues that plaintiff Hwang lacks standing to sue Redwood under the policy

7 because he is not a party to the policy.  (ECF No. 33, at 22–23).  Although Hwang was driving the

8 car at the time of the accident, plaintiff Sapporo Group is the only named policyholder.  (*Id.*).

9 Plaintiffs counter that Hwang has standing because he has an "interest" in the litigation as an

10 authorized driver and owner of Sapporo Group.  (ECF No. 34, at 17–18).

11    "Only the owner of the policy, not the insured…or another related party, has standing to

12 sue for breach [under the policy]."  *Flaherty v. Kelly*, 2013 WL 7155078, at *2, n.1 (Nev. 2013)

13 (unpublished table decision) (emphasis added).  The owner of an insured company does not have

14 individual standing to bring policy claims against the insurer because he has no contractual

15 relationship with the insurer or individual interest under the policy.  *Nijjar v. Gen. Star Indem. Co.*,

16 No. CV 12-08148-DDP-JCG, 2014 U.S. Dist. LEXIS 26399, at *9–10 (C.D. Cal. Feb. 28, 2014)

17 (citing California cases).[1]  This holding extends to bad faith claims because when "no contractual

18 relationship exists, no recovery for bad faith is allowed."  *United Fire Ins. Co. v. McClelland*, 780

19 P.2d 193, 197 (Nev. 1989) (citing California law and finding it persuasive).

20    The parties do not dispute that Hwang is not an owner of the policy involved in this case.

21 The parties do not dispute that the only policyholder is Sapporo Group.  It is irrelevant that Hwang

22 owns Sapporo Group or that he is an authorized driver because he has no contractual relationship

23 with Redwood or individual interest under the policy.  Hwang lacks standing to sue under the

24 policy, as a matter of law.  Accordingly, the court finds that summary judgment is appropriate

25 _____

26    [1] The Nevada Supreme Court has yet to address this specific issue, but the court is
persuaded that it would follow California precedent as it did in *United Fire Ins. Co. v. McClelland*.

against Hwang on all claims.

    B.    <u>Sapporo Group's unfair trade practices claim under NRS 686A.310.</u>

The court must next dismiss Sapporo Group's claim under Nevada Revised Statute 686A.310 for lack of subject matter jurisdiction.[2]  NRS 686A.310 is Nevada's unfair trade practices statute, which enumerates various standards of practice for investigating and handling insurance claims.  Nevada gives exclusive jurisdiction of any claims arising under Title 57 (in which NRS 686A.310 is contained) to the Commissioner of the Nevada Department of Insurance. NEV. REV. STAT. §§ 679B.120(3) (2024),[3] 686A.015(1) (2024).[4]  *See also Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 994 (Nev. 2007); *Jafbros, Inc. v. Am. Fam. Mut. Ins. Co.*, 381 P.3d 627, at *2 (Nev. 2012).

In *Allstate Insurance*, the Nevada Supreme Court explained that Nevada legislators gave the Commissioner "exclusive jurisdiction" over "any matter…in which…a party seeks to ensure compliance with the Insurance Code."  170 P.3d at 994.  Plaintiffs must therefore exhaust their administrative remedies with the NDOI before their claims under the Insurance Code become ripe. *Id.* at 993–94; *Nevada Power Co. v. Eighth Jud. Dist. Ct. of Nevada ex rel. Cnty. of Clark*, 102 P.3d 578, 586 (Nev. 2004).  The Nevada Supreme Court clarified that its holding did not "foreclose actions for tortious…bad faith," but merely precludes private actions seeking *statutory* damages and interest.  *Allstate Ins. Co.*, 170 P.3d at 996.

Sapporo Group does not allege that it has exhausted its administrative remedies with the NDOI.  Its fifth cause of action alleges a breach of "statutory duties" in general and conclusory

---

[2] While Redwood does not argue that Sapporo Group lacks subject-matter jurisdiction to bring a claim under NRS § 686A.015, "a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of an action."  *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3).

[3] "The Commissioner shall…[e]nforce the provisions of this Code…."

[4] "Notwithstanding any other provision of law, the Commissioner has exclusive jurisdiction in regulating the subject of trade practices in the business of insurance in this state."

1      terms without clarifying what type of remedy it is seeking.  (ECF No. 1, at 17–19).  But the

2      complaint also contains a separate cause of action for bad faith.  (*See generally id.*).  Sapporo

3      Group's fifth cause of action is therefore either duplicative of its bad faith claims *or* a claim arising

4      under Title 57.  The claim must be dismissed in either case.[5]

5               C.       Sapporo Group's failure to communicate and tortious bad faith claims.

6      Redwood asks the court to grant summary judgment against Sapporo Group on its second[6]

7      and fourth[7] claims.  (ECF No. 33, at 2).  Regarding the second claim, "failure to communicate" in

8      the context of insurance disputes is not a recognized cause of action in Nevada.  The court must

9      therefore dismiss this claim as not legally cognizable.  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986,

10     991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6).

11     . . . Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

12     Regarding the fourth cause of action, "[b]ad faith is established where the insurer acts

13     unreasonably and with knowledge that there is no reasonable basis for its conduct." *See Dogra v.*

14     *Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-01841-GMN-GWF, 2017 WL 4158607, at *5 (D. Nev.

15     Sept. 19, 2017) (quoting *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354–

16     55 (Nev. 1986)).  In other words, bad faith is the knowing and unreasonable denial of a claim.

17     To prevail on its bad faith tort claim, Sapporo Group must prove that (1) Redwood

18     denied its claim, (2) without any reasonable basis, and (3) Redwood was aware of the lack of

19     any reasonable basis for its denial or recklessly disregarded the unreasonableness of its denial.

20     *See Am. Excess Ins. Co.*, 729 P.2d at 1354.  When a genuine dispute arises as to the causation

21     of the insured's damages, the court can find as a matter of law that there was a reasonable basis

22     for denying the insured's claim.  *See Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of*

23

24     [5] Either the claim is wholly duplicative of Sapporo Group's bad faith claim and must be dismissed on that basis, or it is not, in which case the claim must be dismissed because the court lacks subject matter jurisdiction to adjudicate it.

25     [6] "Declaratory Relief-Failure to Communicate" (ECF No. 1, at 16).

26     [7] "Tortious Breach of the Duty of Good Faith and Fair Dealing" (*Id.* at 17).

1    *Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1247 (D. Nev. 1994); *Feldman v. Allstate Ins.*

2    *Co.*, 322 F.3d 660, 669 (9th Cir. 2003) (holding that a bad faith claim should be dismissed on

3    summary judgment if the defendant demonstrates that there was a genuine dispute as to

4    coverage).

5        Sapporo Group alleges that Redwood acted in bad faith by not resolving its insurance

6    claim in a timely manner and not paying out on the claim even after the umpire rendered a

7    decision in its favor.  (ECF No. 34, at 14–16).  Redwood argues that it did not unreasonably

8    delay processing the claim and no *binding* umpire award was ever rendered.  (ECF No. 38, at

9    11–14.)

10       The court must first clarify that a bad faith tort claim is concerned not with the manner

11   in which the insurer handles the claim, but with whether any reasonable basis existed to deny

12   the claim.  "While bad faith involves the absence of any reasonable basis to deny coverage,

13   bad faith is not a reasonableness of conduct standard."  *Pioneer Chlor Alkali Co.*, 863 F.Supp.

14   at 1242 (citing *Falline v. GNLV Corp.*, 823 P.2d 888, 89–921 (Nev. 1991)).  The *manner* in

15   which an insurer processes a claim is addressed by Nevada's unfair trade practices statute.

16       Turning to the elements of bad faith, Redwood has demonstrated that there is no factual

17   dispute that it had a reasonable basis for not paying the umpire award.  Sapporo Group does

18   not dispute that the policy requires an umpire decision to be signed by at least two of the

19   persons involved (the parties' respective appraisers and the umpire) to be binding on the

20   parties.  To date, Sapporo Group has only ever produced an umpire decision with *one* signature

21   (the umpire's).  (ECF No. 38, at 13).  Even in its response to Redwood's motion, Sapporo

22   Group does not provide the court with an umpire decision bearing two signatures.  This, alone,

23   is a reasonable basis for not paying Sapporo Group the damages dictated by the umpire

24   decision.

25       D.    Sapporo Group's request for attorney's fees.

26       Redwood asks that the court find that Sapporo Group is not entitled to attorney's fees

8

1   because, under the American Rule, attorney's fees are not recoverable absent an agreement, rule,

2   or statute authorizing it.  (ECF No. 33, at 22–23).  Redwood argues that there is no agreement,

3   rule, or statute in this case that entitles Sapporo Group to attorney's fees.  (*Id.*).  Sapporo Group

4   counters, citing *Sandy Valley Associates v. Sky Ranch Estates Owners Association*, that attorney's

5   fees may be awarded in Nevada as special damages when they are a foreseeable result of tortious

6   conduct or breach of contract.  35 P.3d 964 (Nev. 2001).  (ECF No. 34, at 17).

7         *Sandy Valley* is Nevada's "flagship case addressing attorney fees as an element of special

8   damages." *Mitchell v. Nype*, 517 P.3d 905, 2022 WL 4482024 at *4 (Nev. 2022) (unpublished

9   table decision).  The Nevada Supreme Court explained that attorney's fees may be recovered either

10  as a "cost of litigation" authorized by "agreement, statute, or rule"; or as special damages, pleaded

11  as an element of a party's cause of action.  35 P.3d at 969.  The court identified three scenarios

12  wherein attorney's fees may be recovered as special damages: (1) when they foreseeably arise

13  "from tortious conduct or breach of contract," (2) "in recovering real or personal property acquired

14  through the wrongful conduct of the defendant or in clarifying or removing a cloud upon the title

15  to property," (3) or in "actions for declaratory or injunctive relief…when the actions were

16  necessitated by the opposing party's bad faith conduct…." *Id.* at 969–970.

17        The parties do not dispute that no "agreement, statute, or rule" exists here that entitles

18  Sapporo Group to attorney's fees as a cost of litigation.  Sapporo Group's sole avenue for

19  attorney's fees is thus as special damages to its remaining claims for declaratory relief and breach

20  of contract.  But because this court already found that Redwood did not act in bad faith, Sapporo

21  Group is not entitled to attorney's fees as special damages under its declaratory relief claim.

22        Regarding Sapporo Group's contract claim, the Nevada Supreme Court has narrowed and

23  clarified *Sandy Valley Associates*'s scope since its publication in 2001.  In *Wolfram*, the court

24  explained that *Sandy Valley* "did not expand the scope of scenarios that warrant attorney fees as

25  special damages," but was merely explaining the *procedural* standard for pleading fees as special

26  damages. *Pardee Homes of Nevada v. Wolfram*, 444 P.3d 423, 426 (Nev. 2019).  The court

1    reiterated that Nevada followed the American Rule and attorney's fees as special damages is but a

2    *narrow* exception to that rule.  *Id.*

3         Thus, under the first scenario outlined in *Sandy Valley*, a plaintiff is not entitled to

4    attorney's fees simply because it had to prosecute a breach-of-contract action.  *Id.*  Attorney's fees

5    may be awarded as special damages only when, "due to the defendant's intentional wrongful

6    conduct, litigation is *absolutely necessary* to vindicate the party's rights."  *Mitchell*, 2022 WL

7    4482024 at *4 (emphasis added).  Attorney's fees are not allowed simply because the fees "were

8    a reasonably foreseeable consequence of injurious conduct."  *Wolfram*, 444 P.3d at 426.

9         In *Mitchell*, the plaintiffs were previously awarded a judgment against companies owned

10   by the defendants who thereafter intentionally rendered those companies insolvent to prevent the

11   plaintiffs from satisfying their judgment.  *Id.* at *1. The plaintiffs sued under theories such as

12   declaratory relief, fraudulent conveyance, and civil conspiracy.  *Id.*  The court found that the

13   plaintiffs could properly seek recovery of attorneys fees as special damages because the

14   defendants' deliberate actions made the suit "absolutely necessary" for the plaintiffs to satisfy the

15   original judgment.  *Id.* at *4.  The plaintiffs' expenses constituted "a portion of the damages that

16   have been proximately caused by [the defendants'] deliberate actions."  *Id.*

17        This case could not be further from *Mitchell*.  Sapporo Group has failed to establish a

18   genuine issue of fact as to whether Redwood acted in a deliberate, wrongful manner.  There can

19   also be no reasonable dispute as to whether filing suit was "absolutely necessary" for Sapporo

20   Group to vindicate its rights.

21        First, Sapporo Group—the party carrying the burden of proof at trial—has not produced a

22   binding umpire decision entitling it to payment.  Second, it has produced *no* evidence in response

23   to Redwood's motion that shows Redwood *deliberately* delayed the claims or appraisal process in

24   an attempt to avoid paying out on Sapporo Group's claim.  It has produced, at best, evidence that

25   the parties' respective appraisers failed to reach each other for some weeks after the appraisal

26   clause was invoked. (ECF No. 34, at 26–34).  But a delay of less than two months does not amount

10

1   to deliberate, or intentional, wrongful conduct.  *Cf. Estate of LoMastro ex rel. LoMastro v. Am.*

2   *Family Ins. Group*, 195 P.3d 339, 351–52 (Nev. 2008) (finding that ten-month delay did not

3   warrant summary judgment in favor of bad faith).

4        Redwood, on the other hand, has produced evidence that it attempted to resolve the dispute

5   by invoking the appraisal clause and following up on the process in the months following the initial

6   invocation.  (ECF No. 38-2, at 4–16).  Delays in the appraisal process were due not to any

7   deliberate action by Redwood, but to the difficulty in agreeing upon and finding an impartial

8   umpire.  (*Id.* at 6, 16).

9        For example, Sapporo Group's appraiser summarily rejected the list of umpires that

10  Redwood's appraiser selected and delayed sending his own list.  (*Id.* at 6).  When both appraisers

11  finally agreed on an umpire, that umpire rejected the appointment, citing Sapporo Group's

12  appraiser's "less than stellar" reputation.  (*Id.* at 16).  And—Sapporo Group filed suit in early May,

13  *before* the umpire rendered his decision and while the parties were still attempting to resolve the

14  dispute.  (ECF No. 1, at 10).

15       Sapporo Group's breach claim is thus the quintessential type of action that the Nevada

16  Supreme Court explicitly held does *not* entitle the plaintiff to attorney's fees as special damages.

17  Sapporo Group's request for attorney's fees must be stricken.

18       E.    Sapporo Group's request for punitive damages.

19       In Nevada, punitive damages are not available for causes of action "sounding solely in

20  contract."  *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 703 (Nev. 2006).  A district court

21  may properly strike a plaintiff's request for punitive damages when only contractual claims remain

22  and there is no evidence showing that the insurer is "guilty of oppression, fraud, or malice" in

23  denying the plaintiff's insurance claim.  *Lopez v. Progressive N. Ins. Co.*, 486 P.3d 1286, 2021

24  WL 1964655, at *2 (Nev. 2021) (unpublished table decision).

25       Sapporo Group's only remaining claims are for declaratory relief and breach of contract.

26  As discussed above, Sapporo Group has not provided the court with evidence that Redwood might

1    be guilty of "oppression, fraud, or malice."  The court strikes Sapporo Group's request for punitive

2    damages.

3    **IV.      Conclusion**

4           Accordingly,

5           IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Redwood's motion for

6    partial summary judgment (ECF No. 33) be, and the same hereby is, GRANTED in part and

7    DENIED in part.

8           The second and fifth causes of action shall be, and the same hereby is, DISMISSED.

9    Summary judgment is ordered against plaintiff Hwang on all causes of action.  The request for

10   attorney's fees and punitive damages is STRICKEN from the complaint.  Summary judgment is

11   ordered in favor of Redwood on the fourth cause of action.

12          The clerk is instructed to enter judgment accordingly.

13          DATED February 1, 2024.

14

15                                                        _____

16                                                        UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26